IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| CHRISTOPHER WILLIAM GHRIST, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 2:13-cv-1544 |
| CBS BROADCASTING, INC.<br>*doing business as*<br>KDKA-TV PITTSBURGH, | ) ) ) ) ) | Judge Mark R. Hornak |
| Defendant. | ) ) | |

## OPINION

**Mark R. Hornak, United States District Judge**

Christopher William Ghrist is the Plaintiff. Christopher Wayne Ghrist is not. Christopher Wayne Ghrist has had big troubles with law enforcement agencies here in Pennsylvania and also in Georgia. He was arrested on drug and other charges in October, 2011. Christopher William Ghrist was not. The Defendant has allegedly highly publicized those legal problems in its television news broadcasts, and on its internet website, but in doing so, according to the Plaintiff, has persistently used his photograph and not that of Christopher Wayne Ghrist when publishing those news accounts.

According to the Plaintiff, this has held him up to scorn and ridicule, has placed him in a false light, has defamed him, and has intentionally inflicted emotional distress upon him. He seeks a wide range of monetary and other relief from the Defendant based on damages he claims have flowed, and continue to flow, from those publications. Plaintiff's Amended Complaint alleges claims for "False Light/Invasion of Privacy" in Count I, "Defamation" in Count II, "Intentional Infliction of Emotional Distress" in Count III, and "Abuse of Official Process" in Count IV. The first three counts are based on harm allegedly flowing from the publication of the

1

Plaintiff's likeness in conjunction with a story about the criminal activity of the "other" Christopher W. Ghrist. The fourth count seems to allege that because the Defendant is seeking to dismiss this action under Rule 12, the Defendant is "perverting" the legal process because it is beyond dispute that the Defendant, for over two years, wrongly published the Plaintiff's photograph with a news story on an escaped convict. Pending before the Court is the Defendant's Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 13. The Court has considered the Plaintiff's Amended Complaint, ECF No. 12, the Defendant's Motion to Dismiss, the Defendant's Brief in Support, ECF No. 14, the Plaintiff's Response in Opposition, ECF No. 15, and the Defendant's Reply Brief, ECF No. 17. The matter is ripe for disposition, and for the reasons that follow, the Defendants' Motion to Dismiss is granted.

## I. BACKGROUND

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations in the Complaint as true and draw all reasonable inferences in the Plaintiff's favor. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). Therefore, for the purpose of the disposition of the Defendant's Motion, the essential facts are as follows.

The Plaintiff, Christopher William Ghrist, alleges that from October 15, 2011 until at least October 31, 2013, the Defendant published false and defamatory statements about him, resulting from the Defendant's confusion of the Plaintiff's identity with that of another individual, Christopher Wayne Ghrist. Pl.'s Am. Compl. ("Am. Compl."), ECF No. 12, ¶¶ 6, 7, 10, 12-15. Christopher Wayne Ghrist had been arrested on October 15, 2011 by the Pennsylvania State Police in Westmoreland County, Pennsylvania for multiple drug charges and other criminal offenses. *Id.* at ¶ 7. He subsequently escaped police custody, triggered a multi-

2

state manhunt, and was captured by police in Georgia on October 17, 2011 with a loaded firearm and two loaded magazines on his person. *Id.* at ¶¶ 8, 9. On October 15, 2011, KDKA-TV acquired the Plaintiff's photo from the Westmoreland County Prison database. *Id.* at ¶ 10. Multiple individuals in the database had the name "Christopher W. Ghrist." *Id.* at ¶ 11.

The Plaintiff alleges that he received over 110 messages and communications via text message, telephone, and social media as a result of KDKA-TV's publication of his photograph with its story on Christopher Wayne Ghrist, including communications from family members, his landlord, his children, his girlfriend, his friends, employers of his family and friends, and his former girlfriend who removed her child from his physical custody on the night of October 15, 2011 because of that news story. *Id.* at ¶ 17. The Plaintiff says that he promptly brought this mistake to the attention of the Defendant, but to no avail, and it was not until shortly after this lawsuit was filed in state court on October 4, 2013 that the Defendant ceased using the Plaintiff's photograph on its news website. *Id.* at ¶ 18.

On October 4, 2013, the Plaintiff filed a lawsuit in the Allegheny County Court of Common Pleas alleging a claim for False Light/Invasion of Privacy. *Id.* at ¶ 20; ECF No. 1, Ex. A. The Defendant removed the case to this Court on October 24, 2013, on diversity of citizenship grounds. ECF No. 1. That same day, the Defendant moved to dismiss the case on statute of limitations grounds. ECF No. 3. The Plaintiff moved to amend his Complaint on November 8, 2013, ECF No. 8, and that motion was granted by the Court on November 12, 2013. That same day, this Court denied the Defendant's first Motion to Dismiss, without prejudice, as moot. On November 26, 2013, the Plaintiff filed his Amended Complaint, which asserted new claims for defamation, intentional infliction of emotional distress, and abuse of

3

official process. ECF No. 12. The Defendant then filed its second Motion to Dismiss, which is addressed by this Opinion.

## II. DISCUSSION

### a. Standard of Review

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The District Court must accept the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In short, a motion to dismiss should be granted if a party does not allege facts that could, if established at trial, entitle him to relief. *See Fowler*, 578 F.3d at 211.

### b. Defendant's Motion to Dismiss Counts I and II of Plaintiff's Amended Complaint

Defendant contends that Counts I and II of Plaintiff's Amended Complaint, which contain false light/invasion of privacy and defamation allegations, remain time-barred under Pennsylvania's one-year statute of limitations, given that Pennsylvania does not recognize a continuing tort theory of recovery and instead adheres to the single publication rule. Def.'s Br. in Supp., ECF No. 14, at 2.[1] Plaintiff counters that Defendant's "continued republication of such defamatory statements" and "the intentional and/or willful failure to issue any corrective action

---

[1] Where the statute of limitations bar is apparent on the face of the Complaint, it may be raised via motions to dismiss. *Benak ex. rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt.*, 435 F.3d 396, 400 n.14 (3d Cir. 2006).

4

further evinces the merit for Plaintiff's colorable claims as Defendant comes before this Honorable Court with unclean hands." Pl.'s Br. in Opp'n, ECF No. 16, at 5.

Pennsylvania, by statute, sets the statute of limitations for all claims sounding in defamation or invasion of privacy at one year. 42 Pa. Cons. Stat. Ann. §5523(1).[2] All such claims must be brought within one year of the date of publication. "To avoid the potential for endless re-triggering of the statute of limitations, Pennsylvania has adopted the 'single publication rule,' which holds that for purposes of the statute of limitations 'any one edition of a book or newspaper, or any one radio, television broadcast, exhibition of a motion picture of similar aggregate communication is a single publication.'" *In re Philadelphia Newspapers, LLC*, 690 F.3d 161, 174 (3d Cir. 2012) (quoting *Graham v. Today's Spirit*, 468 A.2d 454, 457 (Pa. 1983)); 42 Pa. Cons. Stat. Ann. § 8341(b). "Under this rule, 'it is the original printing of the defamatory material and not the circulation of it which results in a cause of action.'" *Id.* As for this rule's application to the internet, our Court of Appeals has explained that "[w]ebsites are constantly linked and updated. If each link or technical change were an act of republication, the statute of limitations would be retriggered endlessly and its effectiveness essentially eliminated." *Id.* at 175. "Though a link and reference may bring readers' attention to the existence of an article, they do not republish the article." *Id.*

This action was started in state court, with the filing of the Complaint there on October 4, 2013. Thus, claims based on any publication before October 4, 2012 are time barred. Here, the Plaintiff claims that the publication of his photograph first occurred in October of 2011, but he also claims that it continued, on and off thereafter, up until October 31, 2013 because of the

---

[2] Pennsylvania courts have further held that the same one year limitations period extends to any other tort claim based on a harmful publication, no matter the label placed on the cause of action. *See Evans v. Phila. Newspapers, Inc.*, 601 A. 2d 330, 333 (Pa. Super. Ct. 1991). Thus, the one year statute of limitations applies to at least Counts I, II, and III of the Amended Complaint. *See* discussion, *infra*.

continued availability of the original October 2011 story on the Defendant's website. The Defendant counters that the statute of limitations nonetheless bars all of the publication-based claims here because of the application of Pennsylvania's "single publication" rule, 42 Pa. Cons. Stat. Ann. § 8341(b).

Our Court of Appeals held in *In re Phila. Newspapers, LLC* that this "single publication rule" applies with equal force to the situation present here, namely, the continued availability on an internet website of an allegedly damaging publication, concluding that the principles behind the rule – certainty of the timing of the running of the statute of limitations and insuring that defamation suits are brought within the specific time set by statute after the initial publication of the offending story – were fulfilled by the doctrine's application to internet-persistent stories. *In re Phila. Newspapers, LLC*, 690 F.3d at 175-76. And, this is so even if there are minor or technical corrections to the internet content as time goes on, so long as there is not substantive editing of the content such that it becomes a "new" story. *Id.*; *see also McClenaghan v. Turi*, -- F. App'x --, 2014 WL 2199367 (3d Cir. 2014) ("to be found liable for the [] post, however, Turi herself must have been responsible for the republication of the content - it is not enough that the words were originally hers").

The Plaintiff argues that this case is different because the online news article that mistakenly featured the Plaintiff's photograph was accessible through online search engines like Google, and this exponentially amplified the audience for the Defendant's defamatory material. Pl.'s Br. in Opp'n at 15. However, as our Court of Appeals emphasized in *Graboff v. Am. Ass'n of Orthopaedic Surgeons*, 559 F. App'x 191, 194-95 (3d. Cir. 2014), in response to the argument that the article at issue was "repeatedly republished" by virtue of its continued presence on a website, "[u]nder Pennsylvania law, 'it is the original printing of the defamatory material and not

6

the circulation of it which results in a cause of action.'" *Id.* The *Graboff* court continued that "[t]he posting of an article on the Internet is the act of publication. Its continuous availability to be viewed does not constitute republication" because if that was the case, then "'a publisher would remain subject to suit for statements made many years prior, and ultimately could be sued repeatedly for a single tortious act the prohibition of which was the genesis of the single publication rule.'" *Id.* at 195 (quoting *In re Phila. Newspapers, LLC*, 690 F.3d at 174-75).

The Plaintiff cites to *Pendergrass v. ChoicePoint, Inc.*, 2008 WL 5188782 (E.D. Pa. 2008), for the proposition that the single publication rule does not apply "where the defamatory publication sent a false report via search queries throughout the particular database." *See* Pl.'s Br. in Opp'n at 11. The *Pendergrass* court did conclude that in cases where "the allegedly defamatory electronic report was not available to the public but only to subscribing members of a database, the risks of an infinite limitations period and multiple suits are reduced significantly," and because the *Pendergrass* defendant did not circulate the report at issue to a wide audience and instead transmitted it to a third party with the knowledge that it would be made available only to database subscribers upon request, the court found the single publication rule inapplicable. *Pendergrass*, 2008 WL 5188782, at *4. Here, the Plaintiff has made no allegation at all that the Defendant made its defamatory news article available only to a small group of subscribers upon request. To the contrary, the heart of the Plaintiff's Amended Complaint is that the news article on Christopher Wayne Ghrist remained on the Defendant's website and available to anyone online who desired to read it, after just a "simple internet search." *See* Pl.'s Am. Compl. ¶¶ 24, 25. Thus, the *Pendergrass* court's analysis is inapplicable.

Here, the fair reading of the Plaintiff's Amended Complaint is that there has been but a single story about the conduct of Christopher Wayne Ghrist, broadcast on television, and then

made available on the Defendant's internet website, since October 15, 2011, given the reference to "the" story. *See* Pl.'s Am. Compl. ¶ 14. While it is troubling, to say the least, that the Plaintiff alleges that he contacted the Defendant immediately after the story began to run in October, 2011, and claims that it was to no avail,[3] it is also clear that in these circumstances, where the allegedly harmful publication began on or about October 15, 2011, and the content of that publication remained the same thereafter, even on the internet website, the single publication rule provides that the measuring point for counting down the one year statute of limitations also began on that date, and was not "refreshed" each day thereafter that the offending story was accessible online.

### c. **Defendant's Motion to Dismiss Count III**

Defendant also contends that the Plaintiff has not sufficiently pled a claim for intentional infliction of emotional distress ("IIED") because the allegations in his Amended Complaint do not rise to the level of "conduct so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and . . . regarded as atrocious, and utterly intolerable in a civilized community," and regardless, the Plaintiff has not pled the requisite resultant physical harm. Def.'s Br. in Supp. at 7, 9. The Plaintiff counters that the Defendant's conduct was indeed egregious to the degree required by Pennsylvania law, and alleges, for the first time, in

---

[3] In his Brief in Opposition, the Plaintiff references the Defendant's alleged "unclean hands" in failing to take corrective action as grounds for this Court to deny the Defendant's Motion to Dismiss. *See* Pl.'s Br. in Opp'n at 7, 8, 21. "The doctrine of unclean hands, named for the equitable maxim that 'he who comes into equity must come with clean hands,' 'is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant.'" *Karpenko v. Leendertz*, 619 F.3d 259, 265 (3d Cir. 2010); *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 174 (3d Cir. 2001) ("The equitable doctrine of unclean hands applies when a party seeking relief has committed an unconscionable act immediately related to the equity the party seeks in respect to the litigation."). This equitable doctrine has no application to an analysis of the Defendant's legal defenses to the Plaintiff's Amended Complaint based on the argument that the Plaintiff did not file his Amended Complaint within the proper statute of limitations period.

8

his Brief in Opposition,[4] that he "suffered severe depression with its physical side effects; suffers severe anxiety with associated side effects; and lives in a constant state of shame and embarrassment." Pl.'s Br. in Opp'n at 18, 19.

As explained above, Pennsylvania, by statute, sets the statute of limitations for all claims sounding in defamation or invasion of privacy at one year. 42 Pa. Cons. Stat. Ann. §5523(1). All such claims must be brought within one year of the date of publication. Pennsylvania state and federal courts have further held that the same one-year limitations period extends to any other tort claim based on a harmful publication, no matter the label placed on the cause of action. *See, e.g., Evans v. Philadelphia Newspapers, Inc.*, 601 A.2d 330 (Pa. Super. 1991); *Tucker v. MTS, Inc.*, 1998 WL 67527, *3 (E.D. Pa. 1998) *aff'd*, 229 F.3d 1139 (3d Cir. 2000) (concluding that the plaintiffs' emotional distress claim exists solely because of various defendants' roles in disseminating allegedly defamatory statements and as such, it is subject to the statute of limitations for defamation). Thus, the one-year statute of limitations applies to Counts I, II, and III of Plaintiff's Amended Complaint, and Count III is therefore also dismissed on statute of limitations grounds.

Even if the Plaintiff's Count III claim was not barred by the statute of limitations, the Plaintiff has failed to sufficiently plead a cause of action for IIED under Pennsylvania law. To state a plausible claim for intentional infliction of emotional distress, a plaintiff must allege sufficient facts demonstrating that (1) the defendant's conduct was extreme and outrageous; (2) the defendant's conduct caused the plaintiff severe emotional distress; and that (3) the defendant acted intending to cause that person such distress or with knowledge that such distress was

---

[4] It is axiomatic that a complaint may not be amended by a plaintiff through a brief. *See Pennsylvania ex rel. Zimmerman v. PepsiCo., Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (a plaintiff may not amend her complaint through arguments in a brief in opposition to a motion for summary judgment); *Bell v. City of Philadelphia*, 275 F. App'x 157, 160 (3d Cir. 2008).

substantially certain to occur. *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 217 (3d Cir. 2001). Liability for intentional infliction of emotional distress "has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Reedy v. Evanson*, 615 F.3d 197, 231-32 (3d Cir. 2010) (quoting *Field v. Phila. Elec. Co.*, 565 A.3d 1170, 1184 (Pa. Super. Ct. 1989)). In addition, a plaintiff must allege that he or she "suffer[ed] some type of resulting physical harm due to the defendant's outrageous conduct," which must be supported by competent medical evidence. *Reedy*, 615 F.3d at 231; *see also Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005); *Fewell v. Besner*, 664 A.2d 577, 582 (Pa. Super. Ct. 1995) ("A plaintiff must also show physical injury or harm in order to sustain a cause of action for intentional infliction of emotional distress."); *Wilson v. Am. Gen. Fin. Inc.*, 807 F. Supp. 2d 291, 303 (W.D. Pa. 2011).

Here, the Plaintiff has alleged generally that the Defendant disregarded the Plaintiff's repeated assertions that his photograph was inaccurately published with the news story on Christopher Wayne Ghrist, and continued to publish the news article in such a fashion for over two years. Pl.'s Am. Compl. ¶ 19. The Plaintiff pled that the Defendant never apologized for harming his reputation in the community, acted "with bad faith and in an unconscionable manner" while the Plaintiff remained powerless to stop the Defendant's conduct, *id.* at ¶ 47-48, and that the Defendant's conduct "constitutes extreme and outrageous behavior considered unacceptable in a civilized society" and caused the Plaintiff "severe emotional distress," *id.* at ¶¶ 49-50.

Nowhere in the Plaintiff's Amended Complaint is there any allegation of physical injury or harm to him as a result of the Defendant's conduct, let alone any allusion to competent

medical evidence of the same. As for the degree of the Defendant's misconduct, "[c]ases which have found a sufficient basis for a cause of action of intentional infliction of emotional distress have had presented only the most egregious conduct." *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998) (citing *Papieves v. Lawrence,* 263 A.2d 118, 121 (Pa. 1970) (defendant, after striking and killing plaintiff's son with automobile, and after failing to notify authorities or seek medical assistance, buried body in a field where discovered two months later and returned to parents); *Banyas v. Lower Bucks Hospital,* 437 A.2d 1236, 1239 (Pa. Super. Ct. 1981) (defendants intentionally fabricated records to suggest that plaintiff had killed a third party which led to plaintiff being indicted for homicide); *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265, 1274-76 (3d. Cir. 1979) (defendant's team physician released to press information that plaintiff was suffering from fatal disease, when physician knew such information was false)).

Here, the Defendant's alleged unwillingness to correct its published news article to incorporate the actual photograph of Christopher Wayne Ghrist and not that of the Plaintiff is very troubling, and if done knowingly over an extended period of time it could rise to the level of the conduct cited by Pennsylvania courts as supporting a cause of action for IIED. However, this Court concludes that even if the Plaintiff had brought his claim within the statute of limitations period, the Plaintiff has failed to allege the necessary physical harm, coupled with averments of competent medical evidence of such harm, to support such a claim.

#### d. Defendant's Motion to Dismiss Count IV

Lastly, the Defendant argues that the Plaintiff's "abuse of official process" claim has no basis in law, Def.'s Br. in Supp. at 10, whereas the Plaintiff argues that the Defendant is abusing the legal process by requesting that this Court "dismiss the plaintiff's civil action for the failure

to state a claim upon which relief may be granted while continuing to flaunt the offending behavior" and "claim[] ignorance to the unconscionable acts," Pl.'s Br. in Opp'n at 21.

Abuse of process occurs where a "party employs [process] for some unlawful object, not the purpose which it is intended by the law to effect; in other words, a perversion of it." *McGee v. Feege*, 535 A.2d 1020, 1023 (Pa. 1987) (citing *Publix Drug Company v. Breyer Ice Cream Co.*, 32 A.2d 413 (Pa. 1943)). Accordingly, to establish an abuse of process claim, a plaintiff must show that the defendant "(1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed[,] and (3) harm has been caused to the plaintiff." *McNeil v. Jordan*, 894 A.2d 1260, 1275 (Pa. 2006) (citing *Werner v. Plater-Zyberk*, 799 A.2d 776, 785 (Pa. Super. Ct. 2002)).

In Count IV, the Plaintiff sets forth allegations centering on the idea that because the Defendant continued to publish the alleged defamatory statements and "deny[5] wrongdoing" despite the Plaintiff's notifications that his photograph was improperly published, despite the Plaintiff's lawful request to cease and desist, and despite the Plaintiff's filing of a lawsuit, the Defendant's filing of a Motion to Dismiss "pervert[s] legal procedure" and Rule 11 sanctions are appropriate. *See* Pl.'s Am. Compl. ¶¶ 57, 59, 60, 61. These allegations are wholly insufficient to plead a cause of action for abuse of process. The Amended Complaint is devoid of any allegation that the Defendant's filing of its Motion to Dismiss under Fed. R. Civ. P. 12 "employed [the legal process] for some unlawful object, not the purpose which it is intended by the law to effect," was "primarily to accomplish a purpose for which the process was not designed," and caused the Plaintiff some harm. Simply put, the Plaintiff cannot base its abuse of

---

[5] Contrary to the Plaintiff's assertion, the Defendant has not formally admitted or denied any wrongdoing, as it did not file an Answer but filed a Motion to Dismiss on the grounds that the Plaintiff's allegations did not support any claims under Pennsylvania law.

process claim on the Defendant's efforts under Rule 12 to defend itself against the Plaintiff's lawsuit.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Amended Complaint is hereby granted in its entirety. Counts I through IV are dismissed with prejudice without leave to amend because the Court concludes that the Amended Complaint, as analyzed above, cannot be cured by amendment.[6]

An appropriate Order will follow.

Dated: August 21, 2014
cc: All counsel of record

Mark R. Hornak
United States District Judge

---

[6] Where, on the other hand, it would appear that a pleading deficiency could plausibly be cured by amendment, a dismissal is without prejudice. *See Denton v. Hernandez*, 504 U.S. 25, 34 (1992); *Grayson v. Mayview State Hospital*, 293 F.3d 103, 108 (3d Cir. 2002); *see also Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251-53 (3d Cir. 2007). It is worth noting that the Plaintiff had already amended his Complaint once.